The Grand Jury of Montgomery County returned an indictment against the appellant, Eddie B. Bowman, charging him with the offense of grand larceny. Appellant entered a plea of not guilty. A jury found the appellant guilty as charged in the indictment. The trial court entered a judgment sentencing the appellant to the penitentiary of the State of Alabama for a term of five years. The appellant applied for probation. The trial court placed the appellant on probation for four years. Appellant gave notice of appeal to this Court.
The appellant was represented at all proceedings in the trial court by counsel of his choice, and is represented in this Court by the same counsel appointed by the trial court. This appeal was submitted to this Court on briefs.
The appellant states in his brief two reasons why his conviction should be reversed. First, the trial court erred to his prejudice when it denied his motion for a mistrial based on the ground that a witness testified that the appellant had stolen cigarettes from him on previous occasions; second, by refusing to grant appellant's motion for a directed verdict because the state failed to prove a prima facie case against the appellant.
State's evidence tended to prove that on the night of October 13, 1979 Mark Otter was employed by Bruno's Food World, Inc. on Fairview Avenue in the City of Montgomery, Montgomery County, as head stocker and night manager. That he worked from eleven P.M. to seven A.M. That Mr. Otter knows the appellant. That on the night of October 13, 1979 at about 1:30 A.M. Mr. Otter saw the appellant in the store of Bruno's Food World. That Mr. Otter and Bob Simmons were the only employees on duty at Food World Store on Fairview Avenue at the time. That Mr. Otter saw the appellant place twenty-six cartons of cigarettes in two grocery bags. That Mr. Otter locked the front door, and called the City Police. That appellant did not come by a checkout counter, or offer to pay for the cigarettes, but went to the front exit door with the two grocery bags of cigarettes in his arms, and when he stepped on the automatic door opener, the door did not open. That the appellant wiggled the door, and shook it, and it would not open. That after appellant rattled the door, he walked back to an aisle, and placed the two grocery bags of cigarettes down on the floor. The appellant then got some toilet paper, and went through the checkout counter, and then tried to go out the exit door, and asked Mr. Otter to let him out, this Mr. Otter refused to do. That the cartons of cigarettes the appellant placed in the bags were Kools and Winstons, and their value was one hundred thirty dollars.
State's evidence further tended to prove that Mr. William R. Simmons was employed by Bruno's Food World, Inc. on Fairview Avenue on the night of October 13, 1979. That at about 2:15 A.M. was the first time Mr. Simmons saw the appellant in the store. That appellant asked Mr. Simmons if he had any alcoholic beverages, some cold *Page 335 
champale. Mr. Simmons told him that there was one bottle that was cold, and the appellant inquired if there was any more. That Mr. Simmons told the appellant that there were some back on aisle ten. That the appellant and his friend went back to aisle ten, and then the appellant returned to the checkout lane, and repeated his question to Mr. Simmons again. That later when Mr. Simmons was at the checkout lane, he saw the appellant over by the cigarettes. That the appellant stayed at the cigarette counter for some time, and when Mr. Simmons was not busy at the cash register, Mr. Simmons went over to the cigarette counter. That later on Mr. Simmons saw the appellant try to leave the store at the front exit. That at that time the appellant had in his arms two bags that contained twenty-six cartons of cigarettes in them. That when the appellant could not get out of the front exit door, he went back to the aisle where toilet paper is kept, with the two bags of cigarettes, and then came back out of the aisle with only some toilet paper to the checkout counter, and paid for the toilet paper. That there was only one checkout counter open at this time. That the appellant did not attempt to pay for the cigarettes. The appellant did attempt to go out of the front door of the store without paying for the cigarettes. When the police arrived, the appellant, his friend and other people were near the exit door, and when the exit door was unlocked, Mr. Otter was standing near the door. That the person who was with the appellant began to swing at, and got in a scuffle with Mr. Otter, and the appellant ran, and the police chased him, and caught him, and arrested him, and his friend, who was in a scuffle with Mr. Otter, ran the other way, and was not caught. The two bags of cigarettes were brought from the aisle where the appellant placed them to the checkout counter, and the twenty-six cartons of cigarettes were counted by the police officers.
The appellant testified that he went to the store to buy pampers for his baby. That he did not enter the store with a friend, and did not know the person who swung at Mr. Otter. That he did not take, or have anything to do with, any cigarettes. That he bought toilet paper, paid for it, and when he tried to leave the store, he found the exit door locked. That he did run, and the police caught him, but he was not running very fast, and he ran because the police began to rough him up when he got out the exit door. That he had been convicted for a felony in two cases, but it was all a mistake.
The first error complained of by the appellant occurred during the redirect examination of state's witness, Mr. Mark Otter, the manager of Bruno's Food World Store on Fairview Avenue in the City of Montgomery by state's counsel, Mr. Gillis. We quote from the record:
"MR. GILLIS:
"Q. Why did you lock the door?
"MR. ALLEN: We object to why.
"THE COURT: I will let him say why. Overruled.
"Q. (By Mr. Gillis) Why did you lock the door?
"A. Because he stole some cigarettes before.
"MR. ALLEN: We object to that.
 "THE COURT: I sustain it. Do not consider, ladies and gentlemen, that last answer. It does not have anything to do with this case.
 "MR. ALLEN: That is so prejudicial, we move for a mistrial.
 "THE COURT: I deny your motion. And I am going to ask the jury again to just remove that from your thinking. Do not even consider that last answer in any way at all. And I am going to ask if you, each of you can do that. Can you disregard that from your minds, completely?
 "(At this time, the above question was propounded to each of the twelve jurors individually by the Court, and each answered affirmatively)
 "THE COURT: Let the record show that all of the jurors have assured the Court that they could completely disregard that last answer." *Page 336 
The trial judge immediately upon the witness stating: "Because he stole some cigarettes before," excluded the statement from the consideration of the jury, and instructed the jury not to consider the answer, and asked each juror individually if they could disregard that from his mind completely, and each assured in the affirmative. The granting of a motion for a mistrial is addressed to the sound discretion of the trial judge, and this Court should not disturb the ruling of the trial judge, unless there is something in the record to show that the trial judge has abused his discretion. We hold that the trial judge did not abuse his discretion by overruling appellant's motion for a mistrial. If the statement by the witness complained of was erroneously allowed in evidence, the trial judge promptly excluded it from the consideration of the jury. This action, in our opinion, corrected any prejudicial error. No prejudicial error is shown by the record in this respect. Wright v. State, Ala.Cr.App.,354 So.2d 838; Certiorari Denied, Ala., 354 So.2d 842; Napierv. State, Ala.Cr.App., 337 So.2d 62; Retowsky v. State, Ala.Cr.App., 333 So.2d 193; Adair v. State, 51 Ala. App. 651,288 So.2d 187.
The second error complained of by the appellant is that the trial court refused his motion for a directed verdict, because the state failed to prove a prima facie case against the appellant. Appellant argues in his brief that the state did not prove the element of asportation in the crime of larceny. Asportation is defined as the felonious removal of goods.Webster's New International Dictionary. Black's Law Dictionary, Fourth Edition, defines asportation as any appreciable change of the location of the property involved, with felonious intent. State's evidence tended to prove that the appellant was in the store, was seen putting twenty-six cartons of cigarettes in two paper bags, and did not go by the checkout counter, but went straight to the front exit door, and attempted to open it, and when he could not go out the exit door, returned with the two bags of cigarettes to an aisle, and placed them on the floor, and picked up some toilet paper, and went to the checkout counter, and paid for the toilet paper. That when the exit door was unlocked upon the arrival of the police, the appellant went out, and ran, and the police chased him, and caught him. We hold that the evidence was sufficient to submit the state's case to the jury on the charge of grand larceny. That the trial court did not err in refusing to exclude state's evidence, and refusing to direct a verdict for the appellant.Blakeney v. State, 31 Ala. App. 154, 13 So.2d 424, 244 Ala. 262,13 So.2d 430; Martin, alias Walker v. State, Ala.Cr.App.,371 So.2d 460; Mauldin v. State, Ala.Cr.App., 376 So.2d 788;Certiorari Denied, Ala., 376 So.2d 793; Richardson v. State, Ala.Cr.App., 390 So.2d 1, Ala., 390 So.2d 4, Ala.Cr.App.,390 So.2d 6; Jones v. State, 55 Ala. App. 274, 314 So.2d 876.
We have searched the record and are of the opinion that reversible error does not appear. The judgment of the trial court is due to be and is hereby affirmed.
The foregoing opinion was prepared by Honorable JOSEPH J. MULLINS, a retired Circuit Judge, serving as a Judge of this Court; his opinion is hereby adopted as that of the Court.
The judgment below is hereby affirmed.
AFFIRMED.
All the Judges concur.